BERNARD EIFERMAN and BEATRICE EIFERMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Eiferman v. Commissioner
Docket No. 10096-74.
United States Tax Court
T.C. Memo 1976-180; 1976 Tax Ct. Memo LEXIS 217; 35 T.C.M. (CCH) 790; T.C.M. (RIA) 760180; June 9, 1976, Filed Bernard Eiferman, pro se. Michael A. Zimmerman, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years 1971 and 1972 in the amounts of $705.03 and $1,733.10, respectively. Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for our decision the following: Whether petitioner *218 is entitled to a deduction for a theft loss in 1971 of the basis of value of a diamond ring, and in 1972 the amount of $7,520 cash less in each year the $100 exclusion. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, resided at Lake Carmel, New York at the time their petition in this case was filed. They filed joint Federal income tax returns for the calendar years 1971 and 1972. Bernard Eiferman (hereinafter referred to as petitioner) purchased a 4-carat diamond in 1950 for $2,000. He had the diamond set in platinum with three small diamonds on either side of the large diamond. The cost of the setting was $900. For the period May 28, 1950 through May 28, 1953, petitioner had the ring insured along with other items of jewelry. The value at which the ring was insured was $2,000. Petitioner let this insurance policy expire and did not again insure the ring. In the late 1960's petitioner received an offer of over $5,000 from a jeweler for purchase of the ring. In the latter part of 1971, petitioner decided he would give the 4-carat diamond to his wife and have it set in an appropriate setting for her. *219 Petitioner and his son, who was then 14 or 15 years old, on the afternoon of December 29 went to a Kleins store near their home in Lake Carmel, New York to look for a setting for the diamond. Petitioner wore a car coat with deep pockets. He wrapped the diamond in a paper napkin and placed it in a deep pocket in his car coat. He also generally carried his car keys in this pocket. When petitioner and his son went into the Kleins store, petitioner took the ring from his pocket and placed it on the counter for the clerk to show him settings that might be appropriate for the diamond ring. His son and a friend of his son's who had come along were looking at identification bracelets in the showcase while petitioner was looking at settings for the ring. A man was standing down the counter from petitioner looking at watches. There were a number of people in the store. Petitioner did not find a setting which he considered suitable. He wrapped the ring back in the paper in which it had been wrapped when he came into the Kleins store and placed it in his pocket. At some juncture, he also placed his car keys in the same pocket. He told his son and his son's friend to come on with him, that he *220 was going to Korvettes to see if he could find a setting that he liked better than those he had seen at Kleins. He drove to Korvettes, parked, placed his car keys in his pocket and walked into the Korvettes store. He went to the counter where mountings for rings were sold, reached in his pocket for the ring and was unable to find the ring. He searched other pockets in his clothing but could not find the ring. He looked in Korvettes store for the ring and also looked in the area where he had parked and the space surrounding the route he had taken when he walked from his car to the store. He did not find the ring. He then went to the Police Department for the Town of Greenburgh, N. Y. and filed a "Report of Lost or Stolen Property." Following petitioner's name and address, this report reads as follows: Date Property discovered missing 12/29/71 Date last observed by owner 12/29/71 Circumstances surrounding loss Diamond ring wrappedin a tissue was in my coat pocket along with car and house keys while shopping at Korvettes Shop Area Place of occurrence Central Ave. Korvettes Shopping Area
Complete list of property, including color, size, serial numbers and other *221 identifying marks or features: Number of items
Description
Value
1
Mens 4 karat diamond ring set
$3,000.00
in a massive platinum ring
with 6 smaller diamonds sur-
rounding it - between 7 & 8 p.m. I also notified Korvettes lost and found dept., in case the ring should be found. Total Value: $3,000.00 The officer who took the report at the police station suggested to petitioner that he notify the Lost and Found Department at Korvettes and also suggested that he go back and look at Kleins and the parking area there. Petitioner's son said to petitioner that he had noticed that the man who was looking at watches was walking out of the Kleins store behind his father. The man was 18 inches or 2 feet behind petitioner as petitioner walked out of the Kleins store. The son did not see this man or any other person place their hand in or near petitioner's pocket. Petitioner went back to Kleins, unsuccessfully searched for the ring and notified Kleins' Lost and Found Department of the loss of the ring. The last notation on the police report with respect to petitioner's notifying Korvettes' Lost and Found Department of the ring's being missing was added *222 later after petitioner, pursuant to the suggestion made to him, had given such notice and informed an officer at the police station that he had done so. Petitioner has never found the ring. Petitioner had no insurance on the ring at any time in December 1971. Petitioner, since he began working and saving money, has had any amount he was able to save changed into $100 bills and has carried the money with him in a roll. In addition, he usually carries a billfold with some smaller bills in it. On December 8, 1972, petitioner had gone to Barkers Department Store on Bedford Road in Bedford Hills. He came out of the store about 7:30 p.m. and went to get into his car. He was accosted by two men, one of whom held a pistol on him and demanded his money. Petitioner handed this man his billfold. The man who was holding the pistol on petitioner took his billfold which contained $120. Then this man had the other man frisk petitioner. When the frisker felt a lump in petitioner's trousers' pocket, he pulled out the roll of bills and took it. The two men then pushed petitioner into the back of his car and left in a Chevrolet 4-door sedan. The roll of money in petitioner's trousers' pocket *223 consisted of seventy-four $100 bills, making a total of $7,400. Petitioner immediately reported the robbery to the police. The following is the report made by the Bedford Police Department with respect to petitioner's complaint: BEDFORD POLICE DEPARTMENT SERIAL NO.: 72/6140
DATE: 12/8/72
FILE NO.: 28
TIME: 7:54 PM
COMPLAINANT: Mt. Kisco PD.
RECEIVED BY: Lt. Anderson
STREET: 104 Main St.
INVESTIGATED BY: Det. McCall, Ptl.,
CITY & STATE: Mt. Kisco
DeRosh, Buxton
ACCIDENT NO.: CASE NO.: X 72/601
ARREST NO.: ITEM AS REPORTED OR ACTION TAKEN Ptl. Coviello, reports that a man is in front of Barkers Dept. Store, Bedford Rd., Bedford Hills and claims that he was robbed. Car #37 Det. McCall, #35 Ptl. DeRosh, car #32 Ptl. Buxton detailed. Victim: Bernie Eiferman, RD #2, Dingley Rd., Carmel, N. Y. Perpetrator #1: W.M. 5feet10inch, Thin build, long black coat, grey pants, no info on other perpetrator. Escaped in a '60 to '63, Chevrolet, 4 dr. Sed., dark in color, took $7,400 from the person of the victim and his personal papers. Armed with an automatic pistol. Hot Line, all cars, Somers and Lewisboro *224 PDs. notified. Det. McCall put further information on recorder. SUPERIOR SIGNED BY OFFICER /s/Lt. Anderson
INVEST. OFFICER Det. D. McCall
Petitioner talked on several occasions subsequent to December 8, 1972 with officers at the Bedford Police Department and went down to look at pictures to attempt to identify the men who had robbed him. However, he never saw a picture he could identify as either of the men. He never recovered his $7,400 or the $120 that was in his billfold which was taken. Petitioners, on their Federal income tax return for the calendar year 1971, claimed a deduction of $2,900 with the following explanation: "Robbery (3000-100)." On their Federal income tax return for the calendar year 1972, petitioners claimed a deduction of a theft loss of $7,520 minus the $100 limitation, making a total theft loss claim of $7,420. Respondent in his notice of deficiency to petitioners denied the claimed theft losses of $2,900 for the calendar year 1971 and $7,420 for the calendar year 1972 with the explanation that the deductions were disallowed for lack of substantiation. OPINION Section 165(a), I.R.C. 1954, [1] provides for a deduction of any loss *225 sustained during the taxable year and not compensated for by insurance or otherwise. Section 165(c) limits the deduction for losses in the case of individuals to those incurred in a trade or business or a transaction entered into for profit, though not connected with the trade or business, or losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A casualty or theft loss is allowed only to the extent that the amount of the loss arising from each casualty or theft exceeds $100. The evidence here is clear that the robbery of petitioner in 1972 was a theft within the meaning of section 165(c). Respondent does not contend otherwise. His only contention is to question how petitioner was sure the amount of cash that was taken from him in the robbery was $7,520. After listening to the testimony of petitioner and his wife and his son, we conclude that petitioner did habitually carry on his person in $100 bills the greater portion of his total resources. He testified that he regularly counted the amount he had *226 on his person and always knew the amount he had. His wife testified to the same effect. In fact, she stated that for many years she had attempted to persuade petitioner to keep his savings in a bank but had been unsuccessful in persuading him to do so. From the evidence here, we conclude that petitioners sustained a theft loss in the amount of $7,520 in 1972 and are entitled to a deduction under section 165(c)(3) in that year in the amount of $7,420. The facts with respect to the loss of the diamond ring in 1971 are inconclusive. Petitioner testified that he did not know whether the diamond ring was lost from his pocket or was stolen. In fact, the inference from his testimony is that he initially thought the ring had been lost, and only after his son suggested to him that maybe the man who had been looking at watches in Kleins had taken the ring, did petitioner consider that possibly the ring was stolen. However, neither petitioner nor his son saw any activity on the part of this man or anyone else which might indicate a theft of the ring was occurring. The facts in this case are very close to those in Mary Frances Allen,16 T.C. 163 (1951), in which we held *227 that the taxpayer had failed to carry her burden of showing a theft loss. As we pointed out in that case, at 166: If the reasonable inferences from the evidence point to theft, the proponent is entitled to prevail. If the contrary be true and reasonable inferences point to another conclusion, the proponent must fail. If the evidence is in equipoise preponderating neither to the one nor the other conclusion, petitioner has not carried her burden. * * * See also John L. Seymour,14 T.C. 1111, 1119 (1950). In this case the evidence is inconclusive but more nearly indicates a loss by inadvertence than theft. Petitioner had the ring in the pocket with his car keys. The record is not clear where, when or how often he removed the keys from his pocket. Both petitioner and petitioner's son testified that petitioner would jingle his keys in his hand at times when he was looking at something in a store and probably would replace the keys as he left the store and might again take the keys out before he reached the automobile. Understandably, petitioner could not remember precisely at what times he had the keys in his hand and at what times he had the keys in his pocket *228 while he was shopping in the late afternoon and early evening of December 29, 1971. He frankly admitted he did not know whether the ring was lost or stolen. On the basis of these facts, we conclude that petitioner has not carried the burden of showing that his loss of the ring was by theft. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩